| 102 | 633 |
| 133 | 322 |
| 102 | 633 |
| 157 | 80 |

THE CITY OF KANSAS v. THE KANSAS CITY BELT RAILWAY COMPANY, *Appellant.*

DIVISION ONE.

1. **Railroad Crossing Street :** DUTY OF COMPANY. A railroad crossing a highway must do so with as little injury as possible to the highway and must also erect whatever structures are necessary to the convenience and safety of the crossing.

2. ———— : ————. Such duty is a continuing one without any express statutory requirement.

3. **Railroad :** EMINENT DOMAIN : DAMAGES. Where it is sought to open a street or a road over a railroad by a proceeding to condemn property, the damages to the company are not limited to the land appropriated, but include the expenses of building cattle-guards, fencing and such like outlays cast upon the company.

4. ——: ——: ——: ORDINANCE. A railroad built its track over a street under an ordinance requiring it to erect and maintain a suitable bridge so as to allow the use of the full width of the street. The street was afterwards widened, the city taking property on each side from the railroad for that purpose. *Held* that the cost of reconstructing the bridge is an element of damages to be allowed the railroad in such proceeding.

*Appeal from Jackson Circuit Court.*—HON. R. H. FIELD, Judge.

REVERSED AND REMANDED.

*Pratt, Ferry & Hagerman* for appellant.

(1) Where a city by condemnation proceedings seeks to open or widen a street across a railroad, the latter is not limited to a recovery for the land actually taken, but, if changes in the railroad structure become necessary by reason of such action, a recovery can be had on such account. Const. 1875, art. 2, sec. 21; Rorer on Railroads, 444, 445; *Railroad v. Plymouth County*, 14 Gray, 155; *Grand Rapids v. Railroad*, 58 Mich. 641, 648; s. c., 33 N. W. Rep. 15; *Railroad v. Hough*, 61 Mich. 507. (2) The provisions of ordinance 22948 do not bar the appellant of its claim for damages. This question may be considered in two aspects: *First.* Does the ordinance in express terms forbid a recovery for damages? *Second.* If the ordinance does not in express terms so forbid, does the mere fact of the existence of a franchise forbid a recovery? In determining these questions, certain propositions should be called to the attention of the court. (*a*) The ordinance constitutes a contract between the city and the railroad company. 1 Rorer on Railroads, 444, 445; *State ex rel. v. Railroad*, 85 Mo. 263; *St. Louis v. Railroad*, 13 Mo. App. 524. As a matter of fact, there is no provision in the ordinance waiving a claim for damages. (*b*) The requirement of the ordinance that the bridge should be

maintained in a certain position created an implied obligation on the part of the city to do nothing to prevent such maintenance. What is implied in a contract is as much a part thereof as that which is expressed. *Long v. Stearns*, 4 W. Rep. (Ind.) 239 ; *Rogers v. Kneeland*, 13 Wendell, 114 ; *Jones v. Forshee*, 2 W. Rep. (Ill.) 890 ; *Black v. Woodrow*, 39 Md. 194 ; *McCartney v. Glassford*, 20 Pac. Rep. (Wash.) 423 ; *United States v. Speed*, 8 Wall. 57. ( c ) The city, in the ordinance reserving the right to change bridges upon other streets without damages, meant to exclude such right as to Vine street. The maxim, "*Expressio unius, exclusio est alterius*," applies. *Matthews v. Skinker*, 62 Mo. 329 ; *McGuire v. Sav. Ass'n*, 62 Mo. 344 ; *Ex parte Snyder*, 64 Mo. 58 ; *Dyer v. Brannock*, 2 Mo. App. 432, 447 ; *Heidelberg v. St. Francois County*, 100 Mo. 69. ( d ) The mere fact that a franchise was given to appellant was not of itself sufficient to authorize the opening of new streets without compensation. *Com. v. Railroad*, 3 Cush. 25, 53. And see cases cited in the first position of this brief. ( 3 ) If the views herein advanced are sound, there was manifest error in refusing to permit appellant to prove by the witness Bontecou the matters and things set out in the abstract.

*R. L. Yeager* and *Frank H. Dexter* for respondent.

( 1 ) The instructions given state the law correctly. The instructions simply embody the provisions of article 7, of the charter ( Acts of 1875, p. 244 ), and are fully supported by the unquestioned testimony. Again, the instructions fairly present the case under the evidence, and, therefore, there is no ground of complaint. *State v. Barker*, 74 Mo. 293. ( 2 ) Section 4 of ordinance numbered 22948, we submit, is decisive of the contention made by appellant. It provides explicitly " that where said Henry ( Vine ) street * * * passes under, said Kansas City Belt Railway Company ( appellant ) shall erect and maintain suitable bridges * * * so as to

allow of the use of the full width of said  *  *  *  street
*  *  *  ." This was not only a present, but it was
made a continuing, obligation.  In *Cooke v. Railroad*,
133 Mass. 185, reported in 10 Am. and Eng. R. R. Cases,
page 328, where similar obligations were imposed by the
charter, the court held the obligation to be a continuing
one, and further says, "and if, by the increase of popu-
lation in the neighborhood or an increasing use of the
highway, the crossing, which at the outset is adequate,
is no longer so, it is the duty of the railroad to make
such alterations as will meet the present needs of the
public who have occasion to use the highway." *People
v. Railroad*, 58 N. Y. 152 ; *Railroad v. State*, 37 Ind.
489 ; *Johnson v. Railroad*, 10 R. I. 365 ; *Manley v.
Railroad*, 2 Hurl. and N. 840. (3) The duty of
appellant to erect and maintain the bridge at Vine
street is the same as that imposed by the charter of
many railroads and the statutes of many states, to
"keep and maintain" crossings and bridges over streets
"so as not to interfere with the use thereof by the
public." The duty is continuous and subject to the
alteration and widening of the streets by the proper
authorities. *Railroad v. Baltimore*, 46 Md. 425 ; *Bur-
rett v. New Haven*, 42 Conn. 174 ; *Manley v. Railroad*,
2 H. & N. 840 ; *English v. N. Haven & N. Co.*, 32 Conn.
241 ; 1 Redfield on Railways [ 1 Ed.] sec. 132 ; *Railroad
v. Dyer County*, 11 S. W. Rep. 943 ; *Railroad v.
Irwin*, 85 Pa. St. 336 ; *Railroad v. Conners*, 31 O. St.
338 ; *People v. Railroad*, 67 Ill. 118 ; *Wellcome v.
Leeds*, 51 Me. 313 ; *Railroad v. State*, 3 Head. ( Tenn.)
523 ; *Conners v. Railroad*, 4 Gray ( Mass.) 22 ; *Roll v.
Emersdorff*, 52 How. Pr. (N. Y.) 232 ; *Hays v. Railroad*,
9 Hun ( N. Y.) 163.   It is a proper exercise of authority
for a city to impose upon a railroad enjoying a franchise
to run over and across its streets the duty of adapting
the tracks and grade to new highways so as to make the
crossing safe and convenient. Elliott on Roads and
Streets [ 1 Ed.] p. 598 ; *Roxbury v. Railroad*, 6 Cush.

424 ; *State v. Minneapolis, etc., Co.*, 39 Minn. 219.    And the duty to " erect and maintain" the necessary structures is a continuing duty incumbent upon the company without any express statutory requirements.    *Wellcome v. Leeds*, 51 Me. 313 ; *Chillicothe v. Moffett*, 75 Ill. 524 ; *Hatch v. Syracuse, etc., Co.*, 50 Hun, 64 ; *Eyler v. Com.*, 49 Md. 527 ; *Roxbury v. Railroad*, 14 At. Rep.

BLACK, J.—This was a proceeding instituted by the City of Kansas to widen Vine street, formerly designated Henry street, so as to make it seventy instead of fifty feet in width.    Vine street runs north and south, and is crossed by Twentieth street, which runs east and west. The defendant owns and operates a railroad which runs east and west on and along Twentieth street.    At the crossing of these two streets, the defendant owns property on the north side of Twentieth street, which extends up to the lines of Vine, and which is used as right of way in addition to Twentieth street.    The railroad is carried over Vine street by a bridge, which was erected under the terms of the ordinance hereafter mentioned. Damages were allowed the defendant for the land taken in widening the street, but no damages were allowed to compensate it for reconstructing the bridge, so as to make it conform to the street as widened ; hence this appeal.

By an ordinance approved in 1882, and which was accepted by the defendant, the defendant acquired the right to build a double-track railroad from the eastern to the western part of the city, across and along designated streets.    This ordinance provides that the railroad shall cross certain streets at the surface thereof, and others by carrying the street roadway over the railroad, and in other instances the railroad must be carried over the streets by means of bridges.    The ordinance gives the defendant the right to construct its road on and along Twentieth street, where that street crosses Vine street.

Section 4 provides: "Where said Henry street, Charlie street and Forest avenue pass under said railroad, as above mentioned, said Kansas City Belt Railway Company shall erect and maintain suitable bridges, viaducts or trestles of wood, iron or stone, so as to allow of the use of the full width of said Henry street, Charlie street and Forest avenue, excepting only such parts thereof as may be required for posts, columns or masonry piers, to support the track; provided, such posts, columns or masonry piers shall be set in rows parallel to the line of the street or avenue crossed; and provided, further, that there shall not be more than three rows or tiers of supports on any one street or avenue — one at the center and one at or just inside each sidewalk and next to curb line, so as not to interfere with surface gutters; and provided, further, that the total width of all such posts, columns or piers in any one street or avenue, measured across the street or avenue, shall not exceed one-tenth of the total width of the street over which the railroad runs; and provided, further, that the said bridges, viaducts or trestles shall be so constructed as to leave a clear headway of not less than fourteen (14) feet from the level of the grade of any of said streets to the under side of any bridge, viaduct or trestle."

Defendant offered the following proof:

"That in pursuance of the terms of said ordinance the said defendant, the Kansas City Belt Railway Company, entered upon Twentieth street and constructed its two railway tracks along the same.

"That the grade of the tracks of said railway is about sixteen (16) feet above the present established grade of the street, and said tracks are carried across Vine street by a trestle or bridge.

"That in order to construct its bridge it was necessary to make the same fifty (50) feet in length, in order to conform to the established width of Vine street, and it was necessary to raise embankments on each side of

Vine street to a considerable height; also to place in position bents or supports in the street at the ends of the embankments on either side. That the doing of each part of said work cost a large sum.

"That, in case Vine street shall be widened as proposed, the said defendant company would be compelled to remove all the portion of its embankment within the new street lines, and to readjust the supports for its tracks so as to conform with the terms of its franchise, as set out in foregoing ordinance, at a very large cost to itself."

This proposed evidence was excluded on the ground that the defendant had, by the ordinance, assumed the burden of rebuilding its bridge.

The record fails to give us any clear understanding of the present condition of Twentieth street. The railroad passes over and along it, and crosses Vine street on the bridge; but whether Twentieth street is open to travel does not appear. From the evidence offered, but excluded by the court, it appears defendant, in building its bridge so as to conform to the ordinance, made, and was required to make, an embankment in and along Twentieth street, extending up to the lines of Vine street. From this it would appear that the grade of Twentieth street is the same as that of the railroad, both crossing Vine street at an elevation of sixteen feet above the grade of the last-named street.

The position of the city here is this: That the defendant must alter its bridge, without compensation therefor, so as to conform to the street as widened, because by the ordinance it is made the duty of the defendant to "erect and maintain a suitable" bridge at this crossing, "so as to allow of the use of the full width of said Henry street."

In support of this proposition we are cited to a vast number of cases. They show that by the common law a person who cuts through a highway, though by authority of law, must furnish a suitable crossing.

Where a railroad crosses a highway already in existence, the crossing must be made with as little injury as possible to the highway; and the railroad company must erect whatever structures are necessary to the convenience and safety of the crossing. This duty is a continuing one, without any express statutory requirement. Elliott on Roads and Streets, p. 599. And this continuing duty is in no manner cut down by charter provisions or statute law allowing the company to construct its road across highways in such manner as to afford and leave the highway in good repair for public use. *Chesapeake, O. & S. W. Ry. Co. v. Dyer County*, 11 S. W. Rep. 943. Where the duty of erecting and maintaining a bridge devolves upon the company, it is not enough that the bridge was adequate when first built; for, if by increase of population in the neighborhood the bridge becomes inadequate, the company must make the necessary alteration to meet the present needs of the public. *Cooke v. Railroad*, 133 Mass. 185.

The defendant places much reliance upon the well-considered case of *State v. Railroad*, 35 Minn. 131. There the charter of the company gave it authority to construct its road upon, along, across or over any street; but the company was required to put the street "in such condition and state of repair as not to impair or interfere with its free and proper use." The company laid its tracks down on and across the surface of a street. By reason of an increase in the number of tracks and railroad traffic, and the increase of travel on the street, the crossing became unsafe and dangerous. Under these circumstances and the charter provision before quoted, it was held that it was the duty of the company to provide, at its own expense, some other mode of crossing, as by carrying the street under or over the tracks.

There is no complaint here that the bridge obstructs or interferes with the use of the street below; so that

many of the cases cited, some of which have been noticed, do not dispose of the question in hand. Nor do these authorities show that a duty on the part of a railroad company to maintain a bridge structure devolves upon it the further duty of reconstructing the bridge, at its own expense, so as to make it conform to the street as subsequently widened by the city by the exercise of the right of eminent domain. When it is sought to open a street or road across a railroad by proceeding to condemn property, the damages are not limited to the land thus appropriated, but include the expenses of building cattle-guards, fencing, and such like outlays entailed upon the company. *Railroad v. Inhabitants Plymouth County*, 14 Gray, 155; *Railroad v. Hough*, 61 Mich. 507.

Here the city seeks to widen the street, and in doing this not only appropriates part of the defendant's right of way, but throws upon the company the expense of removing banks of earth and readjusting the bridge to conform to the new order of things. These expenses thus brought about, on the plainest principles of justice, constitute elements of damages to be allowed the company in the proceedings to condemn property; for the bridge structure is property as much as the land on which it rests.

If the city is relieved from the payment of these expenses, it is because the defendant, in accepting the ordinance, agreed to change and alter its bridge from time to time so as to conform to the street as it might thereafter be widened. We find no such an undertaking in the ordinance. It was passed and accepted in view of the then established width of the street, and it makes no provision concerning this bridge in case the street should be widened.

As there is no agreement on the part of the company to readjust the bridge, at its own expense, to conform to the street as widened, and as no rule of law

casts that expense upon the company because of its duty to maintain the bridge, it follows that the expenses of removing the embankment and adjusting the bridge to the street as widened are proper elements of damages to be allowed the defendant. The judgment is, therefore, reversed and the cause remanded. All concur.